IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MELVIN ERNESTO ROMERO RAMOS,  )
                              )
              Petitioner,     )
                              )
       v.                     )        1:26-cv-974 (LMB/IDD)
                              )
JEFF CRAWFORD, et al.,        )
                              )
              Respondents.    )

## ORDER

Petitioner Melvin Ernesto Romero Ramos ("Ramos"), a native and citizen of El Salvador, has filed a six-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") agency since March 2, 2026. Specifically, Ramos alleges that ICE's revocation of the Order of Supervision that released him from custody pending his removal from the United States violated 8 C.F.R. § 241.4(*l*)(2) and his due process rights (Count VI). Ramos also alleges that, in attempting to remove him to Mexico without adhering to the proper procedures, ICE violated 8 U.S.C. § 1231(b)(3) (Count I) and his due process rights (Counts II and V). Finally, he alleges that his prolonged detention violates 8 U.S.C. § 1231(a)(6) and Zadvydas v. Davis, 533 U.S. 678 (2001) (Counts III and IV).

Ramos is currently detained at the Farmville Detention Center, which is within this Court's jurisdiction and the basis upon which he is suing Jeff Crawford, the warden of the Farmville Detention Center. Ramos has also sued Markwayne Mullin, the DHS Secretary; Todd Lyons, the Acting Director of ICE; Todd Blanche, the Acting Attorney General; and Robert Guadian, the Acting Director of the ICE Washington Field Office (collectively, "the federal

respondents"). For the reasons discussed in this Order, the Court finds that Ramos has been detained in violation of 8 C.F.R. § 241.4(*l*)(2) and his due process rights. The Court also finds that DHS may not remove Ramos unless an Immigration Judge first reviews the negative determination regarding whether Ramos has a reasonable fear of persecution or torture if removed to Mexico. Accordingly, the Petition will be granted as to Counts I, II, V, and VI, and the federal respondents will be ordered to release Ramos from custody immediately.

I.

The following facts are undisputed. Ramos was born on February 11, 1978 in El Salvador. [Dkt. No. 1] at ¶ 52. He entered the United States without inspection in May 2005 and was placed into removal proceedings on February 4, 2008. Id. ¶ 53; [Dkt. No. 1-1]. On November 14, 2013, an Immigration Judge ordered Ramos removed but granted withholding of removal to El Salvador under § 241(d)(3) of the Immigration and Nationality Act ("INA"), finding that Ramos established that it was more likely than not that he would face persecution in El Salvador. [Dkt. No. 1] at ¶ 54; [Dkt. No. 1-2]. Both Ramos and DHS waived appeal. [Dkt. No. 9-1] at ¶ 8.

From the record before the Court, it appears that after the Immigration Judge entered the removal order, Ramos was not detained until February 6, 2024, when DHS "took [Ramos] into custody and served him with an Order of Supervision," which released Ramos subject to certain conditions. Id. ¶ 10. There is absolutely no evidence in the record before the Court that Ramos violated any of the conditions listed in the Order of Supervision.[1] Nonetheless, on March 2, 2026, ICE detained Ramos and "processed him for a third country removal to Mexico." Id. ¶ 11.

---

[1] As to Ramos's criminal history, it appears from the record before the Court that he was convicted in 2008 of assault and in 2023 of driving while intoxicated. [Dkt. No. 9-1] at ¶¶ 6, 9. Both of these offenses occurred before Ramos was released on the Order of Supervision.

That same day, ICE served Ramos with a Notice of Revocation of Release and Notice of Removal to Mexico. Id.; [Dkt. Nos. 9-2 & 9-3]. The Notice of Revocation of Release, which was signed by Acting Field Office Director Erik S. Weiss, indicated that Ramos's release was being revoked pursuant to 8 C.F.R. § 241.4(l)(2) in order to "enforce the removal order entered against" him. [Dkt. No. 9-2] at 1. Specifically, it stated: "ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order [sic] removal against you. You do not have any pending applications, petitions, [sic] benefits, nor did you express any fear of entering Mexico." Id.

The next day, ICE transferred Ramos to Texas to stage him for removal; however, on March 16, 2026, Ramos "failed to comply with his removal to Mexico at the Hidalgo, Texas Port of Entry because he refused to get off the transport van at the border." [Dkt. No. 12-1] at ¶¶ 6–7. On March 23, 2026, while still in Texas, Ramos expressed a fear of being removed to Mexico and was referred to U.S. Citizenship and Immigration Services ("USCIS") for a third country fear screening. Id. ¶ 8. Subsequently, Ramos was interviewed by an asylum officer, who issued a negative determination. Id. ¶¶ 10–11. On April 8, 2026, Ramos was served a Notice of Failure to Comply and was returned to the Farmville Detention Center. Id. ¶ 12; [Dkt. No. 9-4]. On April 9, 2026, Ramos filed the pending Petition, [Dkt. No. 1], which has been fully briefed, [Dkt. Nos. 9–12]. According to ICE, "[a]bsent the underlying habeas petition, ICE would be able to immediately transfer [Ramos] to [sic] Southwest Border facility and present [Ramos] to Mexico for acceptance." [Dkt. No. 12-1] at ¶ 13.

## II.

Ramos's claims are twofold. First, he argues that he is entitled to release because the federal respondents revoked his Order of Supervision in violation of 8 C.F.R. § 241.4(l)(2) and the Due Process Clause of the Fifth Amendment. Second, Ramos contends that DHS cannot

3

remove him to Mexico unless an Immigration Judge first reviews the asylum officer's negative determination regarding whether Ramos has a reasonable fear of persecution or torture if removed to Mexico. Each of these arguments will be addressed in turn.

A.

To assess the validity of Ramos's detention, the Court must determine whether ICE followed its regulations in revoking Ramos's Order of Supervision. Based on the record before the Court, the federal respondents failed to comply with 8 C.F.R. § 241.4(*l*)(2) because there is no evidence that the ICE official who signed Ramos's Notice of Revocation of Release made the findings required by the applicable regulation.

8 C.F.R. § 241.4(*l*)(2) specifies which ICE officials may revoke an order of supervision and when that revocation may occur.[2] First, "[t]he Executive Associate Commissioner shall have the authority, in the exercise of discretion, to revoke and return to [Immigration and Naturalization] Service custody an alien previously approved for release." 8 C.F.R. § 241.4(*l*)(2). Second, "[a] district director may also revoke release when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." Id.

Here, the Notice of Revocation of Release, which revoked Ramos's Order of Supervision, was signed by Acting Field Office Director Erik S. Weiss, who claimed that ICE plans to remove Ramos to Mexico. [Dkt. No. 9-2] at 1–2. As an initial matter, "[i]t is not clear from the regulation, which refers to previous Immigration and Naturalization Service position

---

[2] 8 C.F.R. § 241.4(*l*)(1) is inapplicable because there is no evidence in the record before the Court indicating that Ramos has violated any condition of the Order of Supervision.

4

titles, whether an ICE field office director has authority" to revoke release.[3] Rombot v. Souza, 296 F. Supp. 3d 383, 387 (D. Mass. 2017). Although 8 C.F.R. § 241.4(*l*)(2) authorizes "district director[s]" to revoke orders of supervision, "ICE's regulations are somewhat contradictory as to whether Field Office Directors and District Directors have the same responsibilities and authority." Ndoye v. Joyce, No. 1:26-cv-1219, 2026 WL 765635, at *3 (S.D.N.Y. Mar. 17, 2026); see Umanzor-Chavez v. Noem, No. 8:25-cv-1634, 2025 WL 2467640, at *5 (D. Md. Aug. 27, 2025) (stating that although a district director may revoke release, "it is not clear whether an ICE field office director . . . has that same authority"). On the one hand, 8 C.F.R. § 1.2 defines the term "district director" as any "asylum office director; director, field operations; district director for interior enforcement; district director for services; field office director; service center director; or special agent in charge" "to the extent that authority has been delegated to such official." This definition supports the conclusion that 8 C.F.R. § 241.4(*l*)(2) authorizes field office directors to revoke orders of supervision. On the other hand, 8 C.F.R. § 287.5(e) "supports a conclusion that District Directors and Field Office Directors are separate entities." Ndoye, 2026 WL 765635, at *4. Section 287.5(e)(2), which identifies the immigration officials authorized to issue arrest warrants for immigration violations, lists "[d]istrict directors" separate and apart from "Field Office Directors," suggesting that the two positions are distinct. 8 C.F.R. § 287.5(e)(2)(i), 287.5(e)(2)(xxxix). Despite this confusion, some courts have stated at least in dicta that field office directors may revoke orders of supervision. See Santamaria Orellana v.

---

[3] For decades, immigration proceedings fell within the purview of the Immigration and Naturalization Service; however, in 2002, in the wake of the September 11 terrorist attacks, Congress passed the Homeland Security Act, which transferred authority to commence removal proceedings from the Immigration and Naturalization Service to the Department of Homeland Security. Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025).

5

Baker, No. 1:25-cv-1788, 2025 WL 2841886, at *3 (D. Md. Oct. 7, 2025); Gazazyan v. Bondi, No. 5:25-cv-2599, 2025 WL 3898484, at *5 (C.D. Cal. Nov. 7, 2025).

Assuming arguendo that a field office director qualifies as a "district director" and thus has the authority to revoke release, the field office director must make the threshold determinations required by 8 C.F.R. § 241.4(l)(2) before revoking a noncitizen's order of supervision. Specifically, the field office director must determine that (1) "revocation is in the public interest" and (2) the "circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner."[4] 8 C.F.R. § 241.4(l)(2). These findings must be made before a noncitizen is detained, Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 162 (W.D.N.Y. 2025), and any post-hoc rationalization ICE may provide to correct the unlawful agency action would be ineffective because a post-hoc rationalization "cannot serve as a sufficient predicate for agency action," Am. Textile Mfrs. Inst., Inc. v. Donovan, 452 U.S. 490, 539 (1981).

There is absolutely no evidence in the record indicating that Acting Field Office Director Erik S. Weiss made a finding before detaining Ramos that the revocation of Ramos's Order of Supervision served the public interest or that the circumstances did not permit referral to a more senior ICE officer. The Notice of Revocation of Release merely states that Ramos's Order of Supervision was being revoked "to enforce the removal order entered" against him. [Dkt. No. 9-2] at 1. The Notice does not contain any analysis as to whether Ramos's detention serves any public interest or whether the Acting Field Office Director considered consulting with a more senior ICE official in deciding to revoke the Order of Supervision. Moreover, the federal respondents have utterly failed to explain "why it is all of a sudden in the 'public interest' to

---

[4] The term "Executive Associate Commissioner" likely refers to an ICE Executive Associate Director. Santamaria Orellana, 2025 WL 2841886, at *4.

effectuate [Ramos's] removal, when the Government has failed to act on his final order of removal for over twenty years." Martinez v. Jamison, No. 2:26-cv-718, 2026 WL 700335, at *5 n.6 (E.D. Pa. Mar. 12, 2026).

The requirements set forth in 8 C.F.R. § 241.4(l)(2) are not merely "housekeeping requirement[s]." Santamaria Orellana, 2025 WL 2841886, at *5. Rather, they constitute "important procedural safeguard[s]" with which the federal respondents must comply before subjecting an individual to a period of detention. Id. Although the federal respondents have argued that Ramos is not entitled to habeas relief because he "has no one to blame but himself for the extended time of his detention," [Dkt. No. 12] at 2, that argument is unavailing where, as here, the petitioner has been detained illegally. Put differently, the federal respondents—who have failed to comply on numerous occasions with their own regulations—are to blame for Ramos's unlawful detention. See Kale v. Alfonso-Royals, 139 F.4th 329, 336 n.3 (4th Cir. 2025) ("[A]n agency lacks discretion to disobey regulations."). Because ICE has blatantly "disregarded the explicit text of its own regulation and violated Petitioner's due process rights," Ndoye, 2026 WL 765635, at *4, the federal respondents will be ordered to release Ramos from custody immediately.[5]

## B.

As to Ramos's second argument, the Court finds that DHS cannot remove Ramos to Mexico unless an Immigration Judge first reviews the asylum officer's negative determination regarding whether Ramos has a reasonable fear of persecution or torture if removed to Mexico.

---

[5] Several federal courts have reached the same conclusion. See, e.g., Benitez Pineda v. Noem, et al., No. 1:25-cv-2337, Dkt. No. 17, at 9 (E.D. Va. Mar. 2, 2026); Ceesay, 781 F. Supp. 3d at 162; Rombot, 296 F. Supp. 3d at 387–89; Ndoye, 2026 WL 765635, at *4; Zhang v. Genalo, No. 1:25-cv-6781, 2025 WL 3733542, at *9 (E.D.N.Y. Dec. 28, 2025); Villanueva v. Tate, 801 F. Supp. 3d 689, 699–700 (S.D. Tex. 2025).

Under the INA, a noncitizen who has been granted withholding of removal may not be removed to a third country if his life or freedom would be threatened in that country. 8 U.S.C. § 1231(b)(3). Although, "neither the INA nor current federal regulations provide for any process for removal of a noncitizen to a third country after a grant of withholding of removal," Sagastizado v. Noem, 802 F. Supp. 3d 992, 1009 (S.D. Tex. 2025), "in almost all other circumstances where an alien raises a potential credible fear of removal to a particular country," an asylum officer conducts a fear screening, and the noncitizen is afforded the opportunity to request that an Immigration Judge review the asylum officer's decision, Ramirez Giron v. Simon, et al., 1:26-cv-388, Dkt. No. 15, at 12 (E.D. Va. Apr. 15, 2016) (Alston, J.). For example, 8 C.F.R. § 208.30, which applies to expedited removal proceedings and noncitizen stowaways, states that the asylum officer conducting the fear screening "shall inquire whether the alien wishes to have an immigration judge review the negative decision, which shall include an opportunity for the alien to be heard and questioned by the immigration judge." 8 C.F.R. § 208.30(g)(1). Similarly, 8 C.F.R. § 208.31, which applies to expedited removal proceedings related to persons convicted of aggravated felonies and those with reinstated removal orders, provides that the "asylum officer's negative decision regarding reasonable fear shall be subject to review by an immigration judge." 8 C.F.R. § 208.31(g).

Here, although Ramos has received a fear screening by an asylum officer, he has not been afforded an opportunity to contest the asylum officer's negative determination before an Immigration Judge. As numerous courts in this circuit have held, such a cursory review of a noncitizen's claim that he fears being removed to a third country violates fundamental principles of procedural due process. See Rivas Rojas v. Noem, et al., 1:25-cv-1624, Dkt. No. 18 (E.D. Va. Nov. 17, 2025) (Giles, J.); Juarez Villatoro v. Noem, et al., 1:25-cv-2359, Dkt. No. 18 (E.D. Va. Jan. 6, 2026) (Trenga, J.); Ramirez Giron v. Simon, et al., 1:26-cv-388, Dkt. No. 15 (E.D. Va.

8

Apr. 15, 2016) (Alston, J.); <u>Cruz Medina v. Noem</u>, 806 F. Supp. 3d 536 (D. Md. 2025); <u>Mendoza Palacios v. Mullin</u>, No. 1:26-cv-648, 2026 WL 933319 (D. Md. Apr. 7, 2026). For these reasons, Ramos may not be removed to Mexico unless—consistent with 8 C.F.R. § 208.31(g)—an Immigration Judge first reviews and affirms the asylum officer's decision that Ramos does not have a reasonable fear of being removed to Mexico.[6] See <u>Bautista Serpas v. Noem, et al.</u>, 1:25-cv-2369, Dkt. No. 15, at 2 (E.D. Va. Feb. 3, 2026) (Trenga, J.) (requiring the federal respondents to comply with 8 C.F.R. § 208.31(g)).

## III.

For all the reasons stated above, Ramos's Petition is GRANTED, and it is hereby

ORDERED that the federal respondents release Ramos from custody with all his personal property subject to the conditions of his preexisting Order of Supervision no later than 4:00 PM on Tuesday, May 12, 2026. The federal respondents may not impose any new or additional conditions on Ramos's release, other than those previously imposed upon him, without leave of court; and it is further

ORDERED that the federal respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Ramos unless (1) he commits a violation of any federal, state, or local law; (2) he fails to comply with the conditions of his Order of Supervision; or (3)

---

[6] 8 C.F.R. § 208.31(g) states: "The asylum officer's negative decision regarding reasonable fear shall be subject to review by an immigration judge upon the alien's request. If the alien requests such review, the asylum officer shall serve him or her with a Notice of Referral to Immigration Judge. The record of determination, including copies of the Notice of Referral to Immigration Judge, the asylum officer's notes, the summary of the material facts, and other materials upon which the determination was based shall be provided to the immigration judge with the negative determination. The immigration judge's review shall proceed under the procedures set forth in 8 C.F.R. § 1208.31(g)."

his Order of Supervision has been lawfully revoked in a manner consistent with 8 C.F.R. § 241.4 (l)(2) and the Due Process Clause; and it is further

ORDERED that the federal respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from removing Ramos to Mexico unless (1) he has first received review by an Immigration Judge, pursuant to 8 C.F.R. § 208.31(g), of the asylum officer's negative determination regarding whether Ramos has a reasonable fear of persecution or torture if removed to Mexico and (2) all other requirements of 8 C.F.R. § 208.31(g) have been satisfied.

The Clerk is directed to enter judgment in Ramos's favor pursuant to Federal Rule of Civil Procedure 58, forward a copy of this Order to counsel of record, and close this civil action.

Entered this 11 day of May, 2026.

Alexandria, Virginia

_____/s/_____

Leonie M. Brinkema
United States District Judge

10